The final case for the day will be 23-2143, Knowlton v. Armijo. Counsel, please proceed. Good morning, your honors. May it please the court. Taylor Rahn, on behalf of the appellant in this case, present at counsel table, is also Deputy General Counsel John Emery of the Human Services Department for the State of New Mexico. Recognizing, as the court stated, I am in control of my own time, I just want to alert the court that I would like to reserve some time for rebuttal. This case is before the court on a 36-year-old consent decree. This case is before the court on a 36-year-old consent decree regarding the processing of food stamp benefits for New Mexico citizens, and specifically we're here on the appellant's motion to dismiss for lack of subject matter jurisdiction. One of the arguments advanced in briefing on this case is that this court does not have jurisdiction to hear this appeal. This case over the 36-year history has been appealed several times, and previously this court denied jurisdiction over several appeals. However, the instant appeal differs from those. In the motion to dismiss, the appellant explicitly argued that the court no longer had subject matter jurisdiction over the modified settlement agreement, which is itself an injunction or a consent decree. And the motion to dismiss explicitly requested that as relief for the motion to dismiss, the modified settlement agreement be dissolved. So this case is distinguishable from prior appeals. Well, it wasn't titled a motion to dissolve. As I recall, it is a motion to dismiss, and it included language. You are asking the district court to enter an order terminating the consent decree. But you can read that motion to say that's kind of a side language, and you're asking that to do a lot of work here to invoke jurisdiction, when, as you know, this court has very recently taken on appeals that have been filed and sort of laid the groundwork for how you could invoke our jurisdiction by specifically arguing for a motion to dissolve an injunction where you lay out the legal standard, where you make specific arguments towards that specific relief requested. How do I read your motion to dismiss to follow what this court has instructed you to do to invoke our jurisdiction? Well, explicitly, the motion to dismiss requests that an order be entered dissolving that, and it's an order dissolving the consent decree, and that's not a tangential or a side portion of the motion. It is the purpose of the motion is to dissolve the injunction. In the 2009 appeal, this court noted that even if the case itself were dismissed, the court would retain jurisdiction to enforce the modified settlement agreement. That's, we're not just asking for dismissal of the case, that the case is no longer active, but actually dissolving the consent decree and requesting that the courts, or finding that the court no longer has subject matter jurisdiction. This court has also stated that there is not a hyper-technical sense in the way that they must be pled, and that it doesn't need to be captioned necessarily a motion for an order dissolving the injunction in order to invoke appellate jurisdiction. So while I recognize the court's point, the court's also referenced that there's more than one way to skin a cat, as it were, in terms of bringing this case before the court's order, and this is distinguishable from the previous appeals in this case where the court did not have jurisdiction. How should we be thinking about the district court's frivolity determination when we consider this appeal? Well, the court chose not to make that analysis in the original amended order. So the court, and it doesn't change the fact that the court denied the motion to dismiss. So to the extent that those are arguments that are raised by the class members on the appeal, several of those arguments were not raised by the class in the briefing below, and it became kind of after the fact briefing. So we would present to the court the argument that the reasoning doesn't control because the district court did not make that determination at the time of entering the amended order. And one of the arguments on appeal was that the district court erroneously compared the second motion, or that actually was filed first, but our motion dismissed that as a subject of the appeal, to a separate motion which is not subject to the appeal, even though the arguments were different. The district court can't retroactively address that error by now including additional written reasoning in its order, finding the appeal frivolous. However, we are prepared to address those arguments today to the extent this court finds some of those arguments compelling. None of them change the state's position on appeal, that the district court's original order was an error, and that the district court lacks subject matter jurisdiction over this case based upon the definition of the class. Am I right that you are only appealing the amended order of August of last year? Yes, Your Honor, you are correct. We are not appealing the district court's memorandum opinion order regarding the issue of class representatives. So it is just the amended order on the motion to dismiss. The basis for that motion to dismiss is the definition of the class in this case, and that definition is not in dispute. It is quite clear it is in the original order of class certification from July 1989, which indicates all present and future applicants to the federal food stamp program, Medicaid program, or Aid to Families with Dependent Children program who have not or will not receive an eligibility determination or benefits under these programs from the New Mexico Human Services Department within the time limits imposed by the law. That definition of the class limits the class standing to those who are denied timely adjudication of their benefits, and that is not all processing of the benefits. And one of the reasons that that has become moot and an inappropriate definition is that in 2020, the district court found the state was complying with all timeliness regulations. So recognizing in Section 2 of the modified settlement agreement actually disengaged that portion of the consent decree, and it is the state's position that that vacated the original standing in this case as defined by the class definition. Recognizing that some consent decrees do include future plaintiffs as part of their definition, I wanted to clarify the argument in the briefing that it is because the court found there were no current violations of the timeliness requirements as addressed in Section 2 of the MSA. That's what makes the future class members speculative. Counsel, why are you relying on the class definition from 1989 when there have been several amendments and settlement agreements and the 2018 consent decree? Why doesn't that document supersede the class definition from 1989? Because it doesn't modify it in any way. Every consent decree since 1989 has adopted the same class definition. I think the 2018 consent decree includes a definition of who are the applicants, and it can be read to say there's really not any dispute about who it applies to, but maybe what is now required in 2018 that the parties have agreed to, whether it's been satisfied, but couldn't you read that consent decree to say, again, who it applies to? It is contained right there within the document, and it's really not disputed because the parties have agreed to it? Well, the district court has also repeatedly stated that the class definition hasn't changed, so it's clearly not the intent of the parties in the 2018 settlement agreement, nor in the subsequent court orders that actually changed the definition of the class. In the court's most recent orders in this case, we continue to cite that 1989 class definition, and the orders relied upon by the plaintiffs that is the operative definition of the class, and so it's submit to the court that it's inappropriate to use ancillary evidence to change the class definition. If the district court or the parties wanted to amend the definition of the class, that would be done so explicitly and clearly rather than talking about who the consent decree applies to. The class definition has not changed, and one of the bases in the original motion to dismiss for dissolving the consent decree was the idea that prospectively applying it was no longer equitable. So while Rule 60b-5 wasn't explicitly invoked in the motion to dismiss, the concepts of future application were invoked, and this court has repeatedly stated in these types of cases, consent decree cases in which a federal court is going to exercise oversight over a state court and agency and dictate local budget priorities and the operation of that agency, the court should be wary of extending that relief longer than necessary. The original class member's grievance and the definition of the class was timeliness. That issue has been remedied, and one of the court's more extensive discussions of that Rule 60b-5 case law is in Jackson v. Los Lunas County Program, which is 880, 3rd, 1176, 10th Circuit, 2018. So while recognizing that wasn't the explicit basis of the motion to dismiss, it is articulated in the standards as far as perspective application being equitable. Is there a separate Rule 60b motion in this case? There was a 60b-6 motion, which is not appealed. It's not appealed? That's correct, Your Honor. So would it be your position that after the dismissal, partial or otherwise, that claimants with claims for that they were paid the wrong amount, that they were wrongly denied inclusion in the benefit class, or that they actually received their benefits late, that those folks wouldn't have any relief under the consent decree? Not individuals that receive their benefits. Well, do you mean like on a monthly basis receive them late? I'm trying to clarify the question. Well, I mean, they didn't receive them in a timely fashion. I don't know that it's been narrowed down in the briefing. Well, Your Honor, it is specifically the eligibility determination or benefits within the time limits imposed by law, and that is part of what Section 2 was dismissed. And so the class argued in the briefing that the operative portion, which is still live of the consent decree, Section 3 actually contains timeliness requirements. However, when you look at them, they're not specific timeliness requirements. They're either not timeliness requirements at all. They simply speak to events occurring concurrently, but not setting a separate deadline for that second event, or they speak to interim events that the goal is the overall compliance with the 30-day processing, and that's actually been found compliant by the court in dismissing Section 2. So I guess I understood the dismissal as relating to timeliness with respect to processing benefit applications and maybe not reaching as far as you're saying it did as to these other things. It included all of the timeliness requirements in the consent decree were included in Section 2 is the state's position. Okay. Just briefly before I reserve the remainder for rebuttal, last week the plaintiff filed, or excuse me, the appellees filed a notice of supplemental authority was procedurally improper as they were simply raising additional arguments that could have been raised in their original briefing. They were relying on documents in the court record that had been available for the entirety of the appeal, but even those additional arguments don't change the analysis because it simply notes that the consent decree over the years have provided relief outside of timeliness, which is not disputed by the state, but it also confirms the argument that the class definition has not changed. I do want to answer all of the court's questions, but if the court doesn't have any right now, I'll reserve the remainder for rebuttal. To address me? Okay, you can reserve the rest. Thanks. Thank you, Your Honors. Counsel? Good morning. May it please the court. My name is Daniel E. O'Halloran, and I represent the plaintiff class in this case. The relief in this case protects New Mexicans who have very low incomes and who are in dire need of health insurance and basic food assistance who apply to the state for these federal programs  The relief in this case protects New Mexicans who have very low incomes and this case ensures that they receive those benefits as required by federal law. Every element of the consent decree, the various modified settlement agreements, is tagged to a particular statute or regulation, federal law regulating this SNAP program, Supplemental Nutrition Assistance, and Medicaid program, which provides health insurance. It is our position that the court lacks jurisdiction over this appeal for the reasons that Your Honors have already suggested. The only thing being appealed here is the motion to dismiss. This motion did not say that it was asking to dissolve an injunction. It said in passing in one sentence that it wanted to terminate the consent decree. And that's not enough to meaningfully distinguish it from Hatton-Gonzalez 1, 2009? I don't think so, Your Honor. I think that if they were looking for that, they should have said it was a motion to dismiss and dissolve the injunction and complied with the requirements of 1292A1. But our case law says you don't have to use magic words and I think that cuts both ways. So what in practice does that sentence seek? So that if we understand it as you advance it, it would not afford appellate jurisdiction. I think what they meant by that was that the court would lose jurisdiction to enforce this. And it's similar in that respect to the 2009 decision of this court. And what they're saying is, really, I mean let's look at the basis of the motion to dismiss. The basis is that when the district court dismissed Section 2 for temporarily reaching timeliness. By the way, they're not in timely compliance today. But they were at that moment, so the court dismissed Section 2 per the requirements of the settlement agreement. And I think that at that point, their position is the court lost jurisdiction to enforce this case. But the injunction continued to exist. And I think that that's all they were seeking. Had they been seeking the dissolution, not only would they have used the language of 1292A1, I mean they were basically admonished about this. And it was the same counsel who was involved at that time, not this counsel arguing this case. But they would have used the language of 1292A1, first of all. Numbers 2, as the district court found, they would have cited Rule 60B5 as the basis for their motion to dismiss. They didn't do that. They filed their motion to dismiss under 60B6. And so it seems to me that this court does not have jurisdiction over this appeal. We also want to note, and I'm sure the court has seen attached to our brief, was the district court's certification of this appeal was frivolous. And not only is it relevant for the court to take into consideration the district court's view of jurisdiction, and of course it is your call whether you have jurisdiction or not, but the district court outlined a pattern by the appellant of seeking appeals when there were crucial issues pending in the district court in an effort in the court's view to stall further consideration of this case. If the court decides it has jurisdiction, and if it moves on to look at the matter on appeal, I'd like to direct the court's attention to the fact that the motion to dismiss is based solely on one issue, and it is that there was dismissal of Section 2 of the Consent Decree caused the loss of all standing because they misinterpreted my view, and I'll explain this later in a moment, the class definition. That's it. On appeal, they raise a new issue. This issue is that there can't be a prospective class because of, they argue, standing requirements. And first of all, we'd like to point out to the court that this was not preserved below in the motion to dismiss. It is not in their docketing statement. It was abandoned in their reply brief. They argued it in their brief-in-chief. We proposed, we presented an alternative argument disputing with their position, and they didn't reply to it. If the court decides that this issue needs to be addressed, we would just simply point to the case law in this and the other circuits supporting plaintiffs on the fact that the inclusion of future class members is proper when you have a prospective injunction like the settlement agreement here. Would your position be that the Strickland case governs it? Excuse me? Would your position be that the Strickland case governs this? Yes. Okay. Exactly. Finally, on this point, defendant's argument frankly doesn't make any sense because injunctive relief must protect future applicants who are injured by defendants continuing unlawful procedures. That's the purpose of a prospective injunctive relief. Next, we'd like the court to focus on the heart of their motion to dismiss, which is that the dismissal of Section 2 of the Modified Settlement Agreement deprive the court of all jurisdiction. This class definition is not limited to timeliness. This class includes those who were denied benefits because of eligibility determinations by defendant through a process that violates federal law. It also includes those who receive incorrect benefit amounts as a result of a process that violates federal law. And it lastly includes those who fail to receive their benefits on time. And just as Judge Carson pointed out or asked, when you asked the other side about, would all those people now be without any remedy under the consent decree under their interpretation, the answer to that is flatly yes. Under their interpretation of the consent decree, all of those plaintiffs, all of those class members, and they are named plaintiffs in this case, all of them would be without any remedy here. The class definition was stipulated by the parties and approved by the court in 1990. And it is clear that both the class definition and the settlement agreement should be interpreted by the parties and the court's conduct over the years since then. It's not a static position or definition frozen in time. We think that a fair reading of it supports our position on this and we know that both the defendant and the court have agreed with us for 30 years. Defendants stipulated to a class definition in 1989 and filed a joint motion to approve a consent decree in 1990. The joint motion is highly revealing about defendants' understanding of the class definition and the issues in the class from the outset. And we provided a copy of that document. It was not in either of the appendices provided by the parties. And frankly, the problem is it's not included in the docket because the docket was scanned subsequently and some documents just didn't make it into the court's docket. But it's there. It was filed on August 28, 1990. And it's clear if the court reviewed the highlighted versions that we supplied to the court that as early as 1990, defendants understood that the class definition included the very people that we're talking about here way beyond timeliness. And none of those people were removed from the class by the court's order concerning Section 2. In addition, something that is part of the appendix, the court's order approving the consent decree. And there, what the court says is, the benefits of this agreement run to the class as a whole and serve the legitimate purpose of providing a uniform, fair, and simple means by which a family in New Mexico may apply for AFDC, food stamp, or Medicaid benefits and receive a prompt, informative eligibility decision based on its need for assistance. And that language makes it very clear. It's not just timeliness that's at issue in this case. Furthermore, in 2008, the district court modified the settlement agreement on the motion of defendants and decided that after a year's negotiation, lowered compliance thresholds for the defendants reaching compliance and exiting from this case, redefined the substantive requirements in Section 3, incorporated renewals, closely tracked CFR requirements, modified the case review process, and it's clear from the 2018 modified settlement agreement, second modified settlement agreement, that the class is not limited to simply those who fail to receive their benefits in a timely way. Thirdly, the court has repeatedly over the years issued orders mandating compliance with federal requirements other than timeliness, and in our brief in chief at pages 23 to 24, we have a long list of those docket entries, those orders over spanning this entire period showing that the court has repeatedly issued orders implementing the consent decree as to issues beyond timeliness. Fourth, defendant argued in 2020 in his motion to remove Section 2 of the consent decree that piecemeal dismissal of each part of the decree as defendant achieved compliance with it was proper and that the case should continue as to defendant's compliance with the rest of the decree that was not dismissed. And the defendants did not at that point in 2020 when they moved for partial dismissal of one section, they never argued that was going to deprive the court of jurisdiction and the case would end. They recognized that was not the case and they expressly argued that. The court asked whether this was going to mean whether the court had to not dismiss in part but had to wait until they complied with everything in the decree and then dismiss the whole decree that was specifically litigated. That was plaintiff's position at that time was that that court should not dismiss any one section. It should wait and dismiss the entire and the court listened to defendants and dismissed just one part. There have been, since 2020, there have been at least two agreements with defendants on compliance issues that do not involve timeliness. Timeliness was not dismissed. Timeliness remains an element of some of the requirements in section three of this decree even if the court were to decide that section two was gone and those plaintiffs were in trouble. The fact is that timeliness is an issue in section three and a number of elements also refer to it in a footnote five in our brief. Finally, I'd like to address the question of the lower court did not abuse its discretion as the defendant argues. The district court in motion, its order, its amended order denying the motion to dismiss, the district court specifically referred to its ruling in a companion motion filed by the defendants. It's a 60B motion and in that other order, the court specifically says he disagrees with the defendants, limited definition of the class, and rejects that. So he addressed the specific question of the motion to dismiss in this other order and he referred to that in his motion to dismiss. And lastly, as Judge Rossman pointed out, in his order denying the stay and also certifying the appeal as frivolous, he articulates further the reasons why he believes he has not taken an action that would cause the dismissal of this case under article three. For all of these reasons, plaintiffs, appellees ask this court respectfully to affirm the district court's decision and to deny this appeal for lack of jurisdiction and on the merits. And if the court has no further questions from me, I will sit down. Thank you. Thank you, counsel. Thank you. In addressing the arguments made by the class counsel, there's a few points I wanted to reiterate. The first is that the 60B-5 is not the only basis for seeking dissolution of a injunction and so the idea that this had to be raised in that specific context has been rejected by this court's idea of there is no magic language that's necessary. And additionally, this is distinguishable from the 2009 appeal not only because we aren't just asking for dismissal. There was an explicit request to dissolve the consent decree itself. We actually explicitly are arguing the court has lost jurisdiction to enforce the entirety of it, which was one of the reasons why the court found in 2019 the interlocutory appeal was or 2009, rather, was inappropriate. I wanted to address the court's reference to the Strickland case. That did not involve a situation where there was only future plaintiffs. So for example, if I were to bring an injunction and I were to say, I'm worried that the police department might use excessive force on me in the future, there would not be a class without a reasonable concern about that future injury and or current individuals who were subjected to those unlawful conditions. You don't certify classes of just future without some beyond speculative nature of future harm. So that's why the court's finding that there was no current violations of Section 2, no current individuals who are receiving untypely processing moves the future prospective relief, even though prospective plaintiffs can be included in class action definitions. But what about the idea that it's not speculative, and that counsel's alleged, at least here today, that you're out of compliance now, that you're not timely? Your Honor, that's simply an allegation that wasn't borne out. That's not an adjudication. That we are, there has not been a rescission or re-engagement of Section 2. Do you deny it? Yes. So you say you are in compliance. You are timely processing the applications. Yes. That is the state's position, is today that we remain timely. Your Honor, and again, that brings us back to the idea of continual and perpetual federal oversight. If we've cured the original violation, that wouldn't continue to give the court oversight and perpetuity, because at one point we were under a consent decree for failure to process these timely. What do you do with the argument where your opposing counsel says, in 2020, you made the specific argument that it was okay to grant your motion to dismiss because piecemeal dismissal was appropriate, and that the court could continue to enforce other parts of the agreement? Subject matter jurisdiction cannot be waived, so even though the state has made, did make an argument that the court would retain jurisdiction over Section 3, at the time standing is a part of the subject matter jurisdiction of the court and can be raised at any time. Okay. Anything further? Nothing. Thank you, Counsel. You're out of time. Thank you for your time. The case will be submitted, and Counselor,